IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

BETTY L. BENTLEY,

        Plaintiff,

VS.                                         CIVIL ACTION NO. 3:06-0729

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

## MEMORANDUM ORDER

        In this action, filed under the provisions of 42 U.S.C. § 405(g), plaintiff seeks review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

        Plaintiff filed her application on June 22, 2004, alleging disability commencing May 21, 1994,[1] as a consequence of "arthritis, osteoporosis, headaches, trouble remembering things, carpal tunnel in left hand, depression" and inability to sleep due to pain. On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

---

        [1]Plaintiff's insured status expired December 31, 1999, and it was incumbent upon her to establish disability on or before that date. Harrah v. Richardson, 446 F.2d 1, 2 (4th Cir. 1971).

At the time her insured status expired, plaintiff was fifty-four years of age and had completed the tenth grade. Her past relevant employment experience consisted of work as an assembler and shipping clerk. In her decision, the administrative law judge found that, prior to her date last insured, plaintiff suffered from "degenerative disc disease, borderline carpal tunnel syndrome on the right, hypertension, and osteoporosis and menopause ...," impairments she found to be severe. Though concluding that plaintiff was unable to perform her past relevant work,[2] the administrative law judge determined she had the residual functional capacity to perform a limited range of light work. On the basis of this finding, and relying on Rules 202.11 and 202.18 of the medical-vocational guidelines[3] and the testimony of a vocational expert, she found plaintiff not disabled on or before December 31, 1999.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. Plaintiff's alleged onset date of May 21, 1994 does not represent a date when she became medically unable to work but rather the date when her employer laid her off. The first record of medical treatment is not until one and one-half years later when plaintiff began seeing a chiropractor on October 30, 1995. This treatment continued for a little more than three months without any apparent lasting improvement in her condition. Notations indicate, however, that she had shoveled snow and exercised with a "cardio glider" during the time she was receiving treatment.

While plaintiff complained of upper back/neck pain on March 26, 1996 when seen by Dr. Ron Brownfield, she related having only a six-month history of this pain. He gave her a trigger

---

[2] This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[3] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2.

point injection and medication. Though he indicated plaintiff should return in one month, it was over two months before she was seen again, and neck problems were not mentioned at that time. She was to return six months following this appointment, but there is no evidence of any further treatment until December 1998, when plaintiff was evaluated by a neurosurgeon, Dr. Weinsweig.[4] Exam revealed full range of motion of the neck, good strength, intact sensation and equal reflexes. Further testing produced results consistent with "borderline" right carpal tunnel syndrome, and "rather marked degenerative changes" throughout the cervical spine. This physician gave plaintiff four options for treatment: surgery, epidural steroid injections, both of which plaintiff declined, physical therapy or living with the pain. Plaintiff did go through a brief course of physical therapy, where she met all short-term goals which were centered on teaching exercises and relieving muscle spasm. Subsequent treatment has been sporadic and conservative.

Nine months after finishing physical therapy, plaintiff was evaluated by Dr. Terrence Triplett for complaints of neck and back pain. Her only medication at that time was for osteoporosis. There are no exam findings in Dr. Triplett's report, but he did prescribe medication and sent plaintiff for an x-ray of her lumbosacral spine which was interpreted as showing degenerative disc disease at the L2-L4 levels. At follow-up, on December 8, 1999, Dr. Triplett noted plaintiff's neck pain and headaches improved with medication, and his report focused primarily on her hypertension. Plaintiff's insured status expired approximately three weeks after this visit, and there is no other medical evidence prior to that time, nor any evidence of further treatment afterward until July of 2000 when plaintiff was treated for a broken ankle.

---

[4]While plaintiff had an x-ray of the cervical spine taken October 26, 1998 at the request of Dr. Robert Hess, who also referred her for the neurosurgical evaluation, there are no reports in the record from Dr. Hess.

Plaintiff has alleged her credibility was not properly evaluated; however, the administrative law judge, in accordance with 20 C.F.R. §§ 404.1529(b), (c),[5] found her allegations "generally credible." Though concluding that her conditions would have caused pain and limitations prior to the expiration of her insured status, she did not find plaintiff completely credible as to the extent of her symptoms and limitations. The administrative law judge noted plaintiff could still perform light household chores, shoveled snow at one point, chose not to have surgery and did not seek medical treatment or take any medication for a considerable period after her insured status expired. As the Commissioner noted, there were also significant lapses in treatment between the alleged onset date and December 31, 1999, and plaintiff's failure to follow-up with physicians suggests that when treatment was initiated or medication prescribed, her symptoms were alleviated. In view of the evidence, and taking account of the administrative law judge's "opportunity to observe the demeanor and to determine the credibility of the claimant," these findings are entitled to "great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir 1984).

While plaintiff also argues the administrative law judge failed to develop the evidence relative to her pain, this is simply a restatement of her credibility argument and has no merit. Plaintiff did not request the administrative law judge to obtain any additional evidence, nor has she identified anything not in the record which would have substantiated her complaints and allegations.

Finally, plaintiff asserts that the administrative law judge failed to consider her impairments in combination, however, a review of the decision reveals that, in assessing whether plaintiff's impairments, either individually or collectively, met or equaled a listed impairment, and in formulating plaintiff's residual functional capacity, the administrative law judge, in fact, considered

---

[5] See also, Craig v. Chatter, 76 F.3d 590, 594-95.

the combined effect of her impairments. She concluded that degenerative disc disease and degenerative arthritis in the cervical and lumbar spine, osteoporosis, mild right carpal syndrome and hypertension would cause plaintiff to be limited to light level work. In addition, the carpal tunnel syndrome would limit ability to repetitively use the right hand/arm. The Court concludes these findings adequately take into account the limitations established in the evidence and therefore finds substantial support for the Commissioner's findings. The Commissioner's decision must, therefore, be affirmed.

On the basis of the foregoing, it is **ORDERED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of the defendant be granted, and the decision of the Commissioner affirmed. All matters in this case being concluded, it is **ORDERED** dismissed and retired from the Court's docket.

The Clerk is directed to transmit a copy of this Memorandum Order to all counsel of record.

ENTER: June 15, 2009

_____
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE

5